FILED

SEP 5 - 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Marissa L. Carter | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 05cv1970 (RJL)<br>) |
| Washington Metropolitan Transit Authority | )<br>) |
| Defendant. | ) |

MEMORANDUM OPINION
(September 3, 2006) [#3]

Plaintiff Marissa Carter, a Metrorail employee for the Washington Metropolitan Area Transit Authority ("WMATA"), filed a three-count complaint against WMATA on October 5, 2005, alleging sexual discrimination by WMATA in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Compl. ¶¶ 1, 21), and derivative liability under the doctrine of *respondeat superior* for the unwanted and offensive sexual touching of her by another WMATA employee (Compl. ¶¶ 27-30). This matter is now before the Court on defendant's Motion to Dismiss. For the reasons set forth below, defendant's Motion is GRANTED.

BACKGROUND

Plaintiff is a subway manager at WMATA's Fort Totten Station, which is a stop for both the Metrorail and Metrobus lines. (Compl. ¶ 9; Pl.'s Ex. B at 1[1]; Pl.'s Ex. C ¶ 2; Def.'s

---

[1] All citations to plaintiff's exhibits refer to those exhibits attached to plaintiff's Opposition to defendant's Motion to Dismiss. All citations to defendant's exhibits refer to those exhibits attached to defendant's Reply.

1

Ex. A at 1.) Plaintiff claims that on either April 6, 2004 or July 6, 2004,[2] a WMATA Metrobus operator who she did not know approached her from behind while she was working and "placed his hand inside the back of [her] pants making contact with the upper portion of her buttocks with his fingers," which prompted an instant and adverse reaction from plaintiff. (Compl. ¶¶ 10-12, 14; *see also* Pl.'s Ex. A at 1; Pl.'s Ex. B at 1; Def.'s Ex. A at 1.) According to plaintiff, she immediately wrote a complaint to her supervisor (Compl. ¶ 14), and, as a result, WMATA's Office of Civil Rights ("CIVR") initiated an internal investigation (*see* Pl.'s Ex. A at 1; Pl.'s Ex. B at 2-3; Pl.'s Ex. C ¶ 3-4; Def.'s Ex. A at 1). On October 4, 2005, CIVR sent plaintiff a letter informing her that it found "insufficient evidence to support a finding of sexual harassment" by her fellow employee[3] and recommended that plaintiff file a complaint of discrimination with the EEOC if she disagreed with the result of the investigation. (Pl.'s Ex. A at 1-2; Pl.'s Ex. C. ¶ 4; Def.'s Ex. A at 1.)

Plaintiff visited the Washington Field Office of the EEOC on October 25, 2004, where she provided a handwritten description of the incident in a Charge Questionnaire and scheduled a January 20, 2005 appointment to meet with an EEOC investigator. (Pl.'s Ex. B at 1-4; Pl.'s Ex. C ¶¶ 5-6.) Plaintiff's submissions, however, are unclear as to the sequence

---

[2] As discussed and analyzed below, in her multiple submissions to the Court, plaintiff provides conflicting dates for both the alleged incident and her initial filing with the Equal Employment Opportunity Commission ("EEOC").

[3] The investigation did conclude, however, in a finding of "sufficient evidence to show that the employee's behavior was inappropriate and unprofessional" (Pl.'s Ex. A at 1), notwithstanding the fact that the employee claimed that he had merely pulled the belt loop on the back of plaintiff's pants to get her attention (*id.*).

2

of events that follows. Although plaintiff filed a Charge of Discrimination with the EEOC on January 19, 2005 (Compl. ¶ 5; Def.'s Ex. A at 1), her affidavit states that she attended the meeting with the EEOC investigator on January 20, 2005 (Pl.'s Ex. C ¶ 6). On July 5, 2005, the EEOC mailed plaintiff a right-to-sue notice, which she received on July 8, 2005. (Compl. ¶ 5.) Ultimately, plaintiff filed the instant action against WMATA on October 5, 2005.

## STANDARD OF REVIEW

Before the Court is WMATA's Motion to Dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and/or Rule 12(b)(6) for failure to state a claim for which relief can be granted. (Def.'s Mot. to Dismiss at 1.)

"When a motion to dismiss under Rule 12(b)(1) has been filed, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Nichols v. Truscott*, 424 F. Supp. 2d 124, 132 (D.D.C. 2006). In addressing whether subject matter jurisdiction lies in a particular case, the court may consider the question "on the complaint standing alone," or, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Nichols*, 424 F. Supp. 2d at 132. A court therefore can look outside the complaint without converting the Rule 12(b)(1) motion into a motion for summary judgment. *Mills v. Billington*, No. 04cv2205, 2006 WL 1371683, at *2 n.2 (D.D.C.

May 16, 2006); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (stating that when a question of a court's subject matter jurisdiction is raised, "the court may inquire, by affidavits or otherwise, into the facts as they exist. . . . As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court" (internal citation and quotation marks omitted)).

By comparison, Federal Rule of Civil Procedure 12(b)(6) provides that a district court should dismiss a complaint for failure to state a claim upon which relief can be granted when it is clear that no relief could result under any facts consistent with the complaint's allegations. *See Conley v. Gibson*, 355 U.S. 41, 45-47 (1957); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, assuming jurisdiction is established, for the purposes of the Court's 12(b)(6) analysis, it will assume the truth of all of the factual allegations set forth in plaintiff's Complaint, *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985), and construe the Complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).

## ANALYSIS

I.   *Count I: Title VII Disparate Treatment Based on Sex*

Defendant contends that plaintiff's first cause of action ("Count I"), claiming that WMATA discriminated against her in violation of Title VII, should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) for failure to file her administrative complaint

on a timely basis.⁴ It is axiomatic that before filing a Title VII lawsuit in federal district court, a plaintiff must satisfy certain administrative prerequisites. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05 (2002); *Washington v. WMATA*, 160 F.3d 750, 751-52 (D.C. Cir. 1998). Chief among these prerequisites is the filing of a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. 2000e-5(e)(1) ("A charge under this section *shall* be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." (emphasis added)). Indeed, a claim is time-barred from being heard in federal court if it has not been filed with the EEOC within this 180-day limit.⁵ *Morgan*, 536 U.S. at 109.

Although plaintiff's Complaint and supporting materials contain numerous inconsistencies that make it difficult for the Court to determine precisely the date of both the

---

⁴ Rule 12(b)(1) is properly used to dismiss untimely Title VII claims. *See, e.g., Murphy v. PriceWaterhouseCoopers LLP*, 357 F. Supp. 2d 230, 238-39 (D.D.C. 2004) ("The Court . . . lacks jurisdiction over alleged discriminatory conduct for which a plaintiff fails to file a timely administrative charge." (citing *Macellaro v. Goldman*, 643 F.2d 813, 816 (D.C. Cir. 1980), and *Rann v. Chao*, 346 F.3d 192, 198-99 (D.C. Cir. 2003)); *Mills*, 2006 WL 1371683, at *2 ("It is well-settled that a plaintiff's failure to exhaust her administrative remedies will deprive a district court of subject matter jurisdiction . . . ." (citing *Artis v. Greenspan*, 158 F.3d 1301, 1302 (D.C. Cir. 1998)). *But see Holmes v. PHI Serv. Co.*, No. 05cv2023, 2006 WL 1867834, at *6-9 (D.D.C. Jul. 7, 2006) (discussing the divergent approaches among members of our Court in determining whether or not a plaintiff's failure to exhaust administrative remedies is jurisdictional in nature).

⁵ The congressional intent behind the requirement that a plaintiff exhaust administrative remedies before filing an action in federal court was "to give federal agencies an opportunity to handle matters internally whenever possible to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985); *see also Siegel v. Kreps*, 654 F.2d 773, 778 n.14 (D.C. Cir. 1981) ("Congress intended that administrative agencies should have an opportunity to consider a federal employee's discrimination claim, because such a process promotes dispute resolution through accommodation rather than through litigation.").

alleged incident and the filing of plaintiffs' charge with the EEOC,[6] whichever interpretation the Court follows, plaintiff squarely fails to satisfy the 180-day filing requirement. Indeed, plaintiff has clearly pled that the alleged unwanted-touching incident occurred on July 6, 2004, and that she filed her Charge of Discrimination with the EEOC on January 19, 2005. (Compl. ¶¶ 5, 9.) This span of 197 days stretches well beyond the 180-day statutory period, and thus, on the basis of her Complaint alone, this Court does not have subject matter jurisdiction over plaintiff's Title VII claim due to her failure to timely exhaust her administrative remedies.[7]

---

[6] In her Complaint, affidavit, and in the Charge of Discrimination filed with the EEOC on January 19, 2005, plaintiff states that the incident occurred on July 6, 2004. (Compl. ¶ 9; Pl.'s Ex. C ¶ 2; Def.'s Ex. A at 1.) But in the Charge Questionnaire that plaintiff completed by hand on October 25, 2004, she wrote the date of the alleged incident in three separate fields as "4-6-04," or April 6, 2004. ( Pl's Ex. B at 1-3.) Similarly, plaintiff's submissions provide two possible dates upon which her charge with the EEOC may have been filed. Plaintiff's Complaint makes no reference to the October 25, 2004 visit to the EEOC, but rather only states that she first lodged her Charge of Discrimination with the EEOC on January 19, 2005. (Compl. ¶ 5.) Later motions and exhibits filed by plaintiff, however, include the October 25, 2004 date. (Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 2; Pl.'s Ex. B at 1-4; Pl.'s Ex. C ¶ 5.) While plaintiff moved to amend her Complaint on January 25, 2006 in an attempt to add the October 25, 2004 date, the motion was opposed by defendant and ultimately denied by this Court on March 10, 2006.

[7] Moreover, considering all of the materials submitted by the parties—which the Court is permitted to do in order to assess its jurisdiction under Rule 12(b)(1), *see supra*—the above result does not change: This Court lacks subject matter jurisdiction over Count I of plaintiff's Complaint due to her failure to timely exhaust administrative remedies.
Plaintiff argues that the Court should consider July 6, 2004 as the date of the alleged incident—the date put forward in her Complaint (Compl. ¶ 9), affidavit (Pl.'s Ex. C), and Charge of Discrimination (Def.'s Ex. A)—and October 25, 2004—the date she first visited the EEOC and completed the handwritten Charge Questionnaire (Pl.'s Ex. B; Pl.'s Opp'n at 1-3) – as the date of her initial EEOC filing. While this span of 111 days indeed appears to satisfy the 180-day filing requirement, this after-the-fact and self-serving approach disregards the sworn statement she submitted on October 25, 2004 claiming April 6—not July 6—as the day of the incident—a time span of 202 days. (*See* Pl.'s Ex. B at 2-3 (plaintiff's signature appearing twice under the typed statement, "I declare under penalty of perjury that the foregoing is true and correct").) Accordingly, the Court will look to the facts as they were originally alleged *by plaintiff* in each of her two *sworn*

6

II.  *Counts II and III: Respondeat Superior for Sexual Assault and Battery*

  A.  *Sexual Assault and Battery*

The second and third causes of action alleged in plaintiff's Complaint ("Count II" and "Count III," respectively), combined, claim that WMATA is vicariously liable, under the doctrine of *respondeat superior*, for the sexual assault and battery that its employee allegedly committed against plaintiff. (Compl. ¶¶ 27-30.) These claims must also be dismissed.

In the District of Columbia, the statute of limitations for assault is one year, as is the limitations period for battery. D.C. Code § 12-301(4) (2001). Plaintiff filed her Complaint with this Court on October 5, 2005, which is more than one year after the alleged incident regardless of which alleged date applies (i.e., April 6, 2004 or July 6, 2004). Because the one-year statutory period expired well before the filing of the underlying sexual assault and battery claim, plaintiff is time-barred from bringing this claim forward.[8]

---

filings with the EEOC on (1) October 25, 2004 and (2) January 19, 2005.

[8]  Plaintiff argues in her Opposition to Motion to Dismiss that "the statute of limitations for the assault and battery claim did not begin to run until Plaintiff has [sic] exhausted her administrative remedies." (Pl.'s Opp'n at 3.) Plaintiff, however, fails to provide *any* authority to support such an argument. The reason for this is clear: The authorities do not support plaintiff's contention. Pursuing a Title VII claim generally does not toll the statutory period for related tort claims. *See, e.g., Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 466 (1975) (holding that plaintiff employee's initial filing under Title VII did not toll the statute of limitations as to his related private discrimination action, sought under 42 U.S.C. § 1981, because "the two remedies are truly independent"); *see also Arnold v. United States*, 816 F.2d 1306, 1312-13 (9th Cir. 1987) (postal employee's state-law sexual harassment, assault, and battery claims against her supervisor did not toll); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322-23 (7th Cir. 1992) (state-law claim of invasion of privacy not tolled); *Pyne v. Procacci Bros. Sales Corp.*, No. 96cv7314, 1998 WL 355518, at *3 (E.D. Pa. June 26, 1998) (emotional distress claims not tolled).

Even if plaintiff had timely filed her Complaint in this Court, however, defendant would not be liable for its employee's alleged actions because both elements of the District of Columbia's *respondeat superior* analysis are not satisfied in this case. Under District of Columbia law, "an

7

## CONCLUSION

For the foregoing reasons, defendant's Motion is GRANTED. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

employer may be held vicariously liable for the intentional torts of his employee only where the employee's tortious act [(1)] grew out of a foreseeable job-related controversy and [(2)] was motivated at least in part by a purpose to serve his principal." *Johnson v. United States*, No. 87cv0300, 1987 WL 15690, at *1 (D.D.C. July 31, 1987); *see also Int'l Distrib. Corp. v. Am. Dist. Tel. Co.*, 569 F.2d 136, 139 (D.C. Cir. 1977) ("In the District of Columbia, unless an assault, or other tort, is actuated in part at least by a purpose to serve a principal, the principal is not liable." (citation and internal quotation marks omitted)). While there may be a potential question as to whether the first prong of the *respondeat superior* analysis is satisfied by the employee's conduct, the second prong clearly is not met. A review of the record indicates that the employee's alleged actions, if true, were not motivated in any part by a purpose to serve defendant WMATA; plaintiff herself even acknowledges in her Complaint that the touching "*was solely for the purposes of satisfying [the employee's] prurient interests.*" (Compl. ¶ 25 (emphasis added).) Furthermore, the letter sent to plaintiff at the conclusion of the CIVR investigation made it clear that "it is the policy of WMATA to provide a work environment free from unlawful discrimination in any form." (Pl.'s Ex. A at 1.) Thus, the only conclusion that can be drawn fairly from the allegations of plaintiff's Complaint and her supporting submissions mirrors the conclusion found in *Johnson*: "[T]he individual['s] . . . assault upon plaintiff was simply a personal adventure committed solely for the purpose of gratifying [his] own desires. Such conduct is outside of the scope of [his] employment and consequently not actionable . . . ." 1987 WL 15690, at *2.